## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

**KATRINA M.,[1]**,

            Plaintiff,

    v.

**ANDREW M. SAUL,** Commissioner
of Social Security,

            Defendant.

Case No. 2:19-cv-1536-SI

**OPINION AND ORDER**

Kevin Kerr, SCHNEIDER KERR & ROBICHAUX, P.O. Box 14490, Portland, OR 97293.
Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Assistant United States
Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland,
OR 97204; Jacob Phillips, Special Assistant United States Attorney, OFFICE OF GENERAL
COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA
98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Plaintiff Katrina M. (Plaintiff) brings this action pursuant to § 205(g) of the Social

Security Act (the Act), *as amended*, 42 U.S.C. § 405(g), to obtain judicial review of a final

---

      [1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case. Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

decision of the Commissioner of the Social Security Administration (Commissioner) denying

Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Act and

Supplemental Security Income (SSI) under Title XVI of the Act. For the following reasons, the

Court REVERSES the Commissioner's decision and REMANDS for further proceedings

consistent with this opinion.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it rests on the proper legal

standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also*

*Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more

than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554

F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th

Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading of the record, and this Court may not substitute its judgment

for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193,

1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may

not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495

F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th

Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the

Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554

F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for DIB and SSI on August 21, 2012 alleging disability beginning that same day. AR 20. The Commissioner denied those claims on January 25, 2013. *Id.* Reconsideration was denied on September 26, 2014. *Id.* Plaintiff's claims were denied after a hearing before an Administrative Law Judge (ALJ) and by the Appeals Council, and Plaintiff filed a Complaint to Review Final Decision of Commissioner with the Court. *Id.* The Court affirmed the Commissioner's decision and dismissed Plaintiff's Complaint with prejudice on April 11, 2017. *Id.*

Plaintiff filed a new application for DIB and SSI on May 13, 2016, alleging disability beginning September 30, 2012. *Id.* The Commissioner initially denied the claims on August 18, 2016, and upon reconsideration on October 4, 2016. *Id.* Plaintiff requested a hearing before an ALJ in writing on November 7, 2016. *Id.* Because "the prior hearing decision is final and binding on the issue of disability during the previously adjudicated period," and "the record [did] not include any new and material evidence or other basis for reopening the prior hearing decision," the ALJ "dismisse[d] [Plaintiff]'s request for a hearing as it to relates to the period on or before September 26, 2014." *Id.* On June 7, 2018, the ALJ held a hearing on Plaintiff's new application as to disability after September 26, 2014. AR 21.

On August 14, 2018, the ALJ issued a decision denying Plaintiff's claim for benefits. AR 17, 20-36. On October 12, 2018, Plaintiff requested review of the hearing decision because, as relevant to this decision (1) "two of the three jobs the [Vocational Expert (VE)] provided are beyond the scope of [Plaintiff's] RFC"; and (2) "the number of jobs available in the remaining position [of printed circuit board assembler] is substantially less than the VE testified." AR 372. The Appeals Council declined to review the ALJ's decision on July 20, 2019, making the ALJ's

decision the final agency decision. AR 1-3. Plaintiff seeks judicial review of the agency's final decision.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,

then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

As a preliminary step for Plaintiff's DIB claim, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2017. AR 24. The ALJ then proceeded to the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 27, 2014. *Id.* At step two, the ALJ determined that Plaintiff suffered medically determinable severe impairments of lumbar spine degenerative disc disease, cervical spine degenerative disc disease, thoracic spine scoliosis, and migraines. *Id.* At step three, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 25. The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform

> sedentary work as defined in 20 CFR 416.967(c) with no more than frequent pushing and pulling with the right arm. She can frequently reach overhead with the dominant right arm as well as frequently finger and handle. The claimant can frequently climb ramps and stairs, never climb ladders, ropes, or scaffolds, frequently balance, occasionally stoop and kneel, frequently crouch, and never crawl. She must avoid all exposure to workplace hazards.

AR 26. Based on these limitations, at step four, the ALJ found that Plaintiff could not perform any of her past relevant work. AR 34.

At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, including telemarketer (1.5 million jobs in the national economy), taxicab dispatcher (250,000 jobs in the national economy), and printed circuit board assembly (711,000 jobs in the national economy). AR 35. The ALJ thus concluded that Plaintiff was not disabled. AR 36.

**DISCUSSION**

Plaintiff argues that the ALJ's decision at step five that Plaintiff could perform jobs that exist in significant numbers in the national economy is not supported by substantial evidence. First, Plaintiff argues that the record contains no evidence that Plaintiff acquired transferable skills and therefore the ALJ erred by finding that Plaintiff could perform semiskilled work like telemarketer or taxicab driver. Second, Plaintiff argues that, because the VE's job numbers testimony was incorrect, substantial evidence does not support the ALJ's finding that 711,000 jobs exist in the national economy for printed circuit board assembly. Plaintiff bases her assertion on evidence Plaintiff submitted to the Appeals Council from the Bureau of Labor Statistics (BLS) showing that fewer than 600,000 jobs exist in the field of "Inspectors, Testers, Sorters, Samplers, and Weighers," a field comprised of 782 occupations from the Dictionary of Occupational Titles (DOT), including printed circuit board assembly.

At step five of the sequential analysis, the burden of proof rests with the Commissioner to establish whether other work exists in the national economy that an individual of the claimant's age, education, work experience, and RFC can perform. *See* 20 C.F.R. § 416.969; *Tackett*, 180 F.3d at 1099. In making this finding, an ALJ relies "primarily" on the DOT for information about the requirements of other work in the national economy.[2] Social Security Ruling (SSR) 00-04p, at *2. An ALJ may also rely on a VE as a source of occupational evidence. *Id.*

A VE's testimony is "one type of job information that is regarded as inherently reliable." *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017). The VE's testimony is substantial evidence and no additional foundation beyond the VE's recognized expertise is required for the

---

[2] This includes the DOT's companion publication, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*. *See* U.S. Dep't of Labor, SCO (U.S. Emp. And Training Admin., 1993).

VE's testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). VE testimony, however, "is not incontestable." *Buck*, 869 F.3d at 1051. For example, a court cannot ignore "vast discrepanc[ies] between the VE's job number and those numbers tendered by [Plaintiff], presumably from the same source." *Id.* at 1052.

## A.  Telemarketer and Taxicab Dispatcher

Plaintiff first argues that the ALJ erred by failing to identify transferable skills that would allow Plaintiff to perform semiskilled work including as a telemarketer or taxicab dispatcher. Although the Commissioner does not explicitly concede error on this point, he notably declines to offer any defense of the ALJ's finding that Plaintiff could perform those jobs. When the Commissioner fails to defend a position, he "apparently conced[es] it is erroneous." *Kara M. v. Comm'r of Soc. Sec.*, 2020 WL 6144816, at *3 (W.D. Wash. Oct. 20, 2020); *see also Landeros Zamora v. Comm'r of Soc. Sec. Admin.*, 2020 WL 5810060, at *3 (D. Ariz. Sept. 30, 2020) ("Because the Commissioner does not defend the validity of–let alone, mention–the other reasons the ALJ provided for discounting Plaintiff's allegations in his argument, the Court presumes that Plaintiff's allegations of error with respect to them are meritorious . . . ."). Thus, the Court presumes Plaintiff's argument is correct on this point.

Even if the Court were not to presume the validity of Plaintiff's argument, Plaintiff would still prevail. The ALJ relied on the VE's testimony that Plaintiff could perform the requirements of "representative occupations such as telemarketer" and "taxicab dispatcher." AR 35, 67-68. As the ALJ and VE noted, both jobs have a specific vocational preparation (SVP) score of three. AR 35, 67. Work with an SVP of three is semiskilled work. SSR 00-4p at *3, *available at* 2000 WL 1898704 (Dec. 4, 2000). A plaintiff must have transferable skills to perform semiskilled work. *See* SSR 83-10, 1983 WL 31251, at *3 (1983) ("[S]emiskilled work depends upon the presence of acquired skills which may be transferred to such work from past job experience

above the unskilled level."); *see also Steward v. Barnhart*, 44 F. App'x 151, 152 (9th Cir. 2002)

("[A]n applicant must possess transferable skills from previous work in order to perform SVP-3

jobs.").

  The record does not contain substantial evidence—or, really, *any* evidence—that

Plaintiff's past relevant work provided the transferable skills required for her to perform the

occupations the VE identified. The ALJ made no finding about whether Plaintiff gained

transferrable skills from her prior work, explaining "[t]ransferability of job skills is not material

to the determination of disability." AR 34; *cf Steward* 441 F. App'x 152-53 (holding that the

ALJ's finding that the plaintiff could perform work with an SVP of three was not supported by

substantial evidence because the ALJ also found that the plaintiff had no transferrable skills).

The VE did not identify any transferable skills nor did the ALJ ask the VE to consider Plaintiff's

potential transferable skills in the hypotheticals the ALJ posed to the VE. *Accord Childs v.*

*Colvin*, 2016 WL 1417380, at *8 (D. Or. April 11, 2016) (finding no error where an ALJ "made

no transferable skills finding" because the ALJ "did ask the VE about transferable skills in

various hypotheticals" and "in response, the VE testified about transferable skills").

  It is unlikely that Plaintiff possessed transferable skills, at least transferable skills relevant

to work as a telemarketer or taxicab dispatcher. Plaintiff's past relevant work was as a waitress.

AR 34. The DOT classifies waitressing as semiskilled work. DOT 311.477-018. A waitress

"[s]erves beverages," "[c]omputes bill and accepts payment," and "[m]ay take orders for and

serve light meals." *Id.* In other cases, VEs have testified that waitressing carries no transferable

skills. *See Flowers v. Colvin*, 2016 WL 807693, at *5 (D. Or. Feb. 11, 2016) ("The VE stated

that the job of 'waitress [is] at best [a] semi-skilled [job so] there'd be no transferable skills.'");

*Cooley v. Colvin*, 2015 WL 1457974, at *5 (C.D. Cal. March 30, 2015) ("[The VE] expressly stated that plaintiff acquired no transferable skills from her waitress work.").

Additionally, at least one court rejected an ALJ's finding that a plaintiff with past relevant work as a waitress had the transferable skills required for work as a telemarketer. *Cooley*, 2015 WL 1457974 at *5-6. Similarly, the DOT's description of the work of a taxicab dispatcher does not reveal any overlap with the work of a waitress. A taxicab dispatcher must "[m]aintain[] [an] operational map showing locations of each cab," "log calls relayed to each driver and address of patron," and "[a]rrange[] for relief cab or driver." DOT 913.367-010. It is unclear how Plaintiff's past work serving meals, making beverages, and computing bills would allow her to complete the tasks required of a taxicab dispatcher. There simply is no evidence in the record that Plaintiff has transferable skills relevant to work as a telemarketer or taxicab dispatcher. Thus, substantial evidence does not support the ALJ's finding, even if the Commissioner had not implicitly conceded the argument.

**B.  Printed Circuit Board Assembly**

The ALJ also relied on the VE's testimony that Plaintiff could perform the requirements of "representative occupations such as . . . printed circuit board assembly" and that 711,000 printed circuit board assembly jobs exist in the national economy. AR 35; *see* AR 67 ("And we have printed circuit board assembly. DOT 726.684-110, with 711,000 nationally.").[3] Plaintiff's

---

[3] The VE was inconsistent about which representative jobs she believed Plaintiff could perform. At the hearing, the VE testified that Plaintiff could perform the work of telemarketer, dispatcher, and printed circuit board assembly. In a post-hearing written response to a hypothetical posed by the ALJ, however, the VE wrote that at the hearing she identified the occupations of "Telemarketer," "[Taxicab] [D]ispatcher," and "*Bill Sorter*." *Id.* The VE does not mention "printed circuit board assembly" in her written response. *See* AR 366-67 (emphasis added). Neither the ALJ, *see* AR 368-69, nor Plaintiff's counsel, *see* AR 370, noted the difference. The ALJ's decision, which discusses the VE's written submission, never mentions this difference between the VE's testimony and the VE's written submission. AR 35.

counsel asked the VE for the source of the job number, and the VE replied, "Department of Labor." AR 69.

On October 12, 2018, Plaintiff requested review of the ALJ's decision by the Appeals Council. AR 255-57. Plaintiff argued, among other things, that the ALJ's decision was not based on substantial evidence because the ALJ relied on flawed testimony from the VE. AR 374. Plaintiff explained that, according to the BLS, there were many thousand fewer "printed circuit board assembly" jobs in the national economy than testified to by the VE. *Id.* The Appeals Council denied Plaintiff's request for review. AR 1-3.

Plaintiff's argument that the VE's testimony about the number of "printed circuit board assembly" jobs is flawed is based on BLS's Standard Occupational Classification System (SOC).[4] VEs also use the SOC codes, at least as a starting point, because "[a]n SOC code provides information about job numbers, which the DOT does not." *Tracey v. Saul*, 2021 WL 369546, at *3 n.2 (C.D. Cal. Feb. 3, 2021). SOC 51-9061.00 "Inspectors, Testers, Sorters, Samplers, and Weighers" encompasses 782 occupations from the DOT, including "printed circuit board assembly." Plaintiff presents evidence that, in 2018, according to BLS, there were

_____

[4] The Second Circuit has aptly explained the difference between SOC codes and the DOT:

> [The] Standard Occupational Classification System ("SOC") code [is] a new system the Bureau of Labor Statistics has embraced to replace the DOT code regime. SOC codes, however, . . . do not contain the same detailed occupational information as DOT codes. Thus, a VE must use some method for associating SOC-based employment numbers to DOT-based job types. The problem, however, is that DOT codes are much more granular than SOC codes—according to Brault, there were nearly 13,000 job titles in the 1991 edition of the DOT, but only about 1,000 SOC titles.

*Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 446 (2d Cir. 2012).

only 557,510 jobs across all 782 occupations in SOC 51-9061.00, around 150,000 *fewer* jobs

than the VE testified existed *just for* printed circuit board assembly. Pl.'s Br. (ECF 13) at 6 n.2

(citing Occupational Employment and Wages, May 2018, U.S. Bureau of Labor Statistics,

https://www.bls.gov/oes/2018/may/oes519061.htm).

The Court may consider the evidence Plaintiff presented to the Appeals Council. "[A]

claimant who wishes to challenge the factual basis of a VE's estimate of the number of available

jobs in the regional and national economies must raise this challenge before administrative

proceedings have concluded." *Shaibi v. Berryhill*, 883 F.3d 1102, 1103 (9th Cir. 2017); *see also*

*id.* at at 1108 (holding that the plaintiff had not preserved his challenge to the ALJ's reliance on

the VE's job numbers because the plaintiff did not "cross-examine the VE as to the accuracy of

those [numbers], or *challenge that accuracy before the Appeals Council*" (emphasis added)). A

court may consider additional materials that Plaintiff did not present to the ALJ but did present to

the Appeals Council, even when the Appeals Council denied claimant's request for review.

*Ramirez v. Astrue*, 8 F.3d 1449, 1451–54 (9th Cir. 1993) ("[The court considers] on appeal both

the ALJ's decision and the additional material submitted to the Appeals Council."); 20 C.F.R.

§ 404.976(b).

Because a VE's testimony is "one type of job information that is regarded as inherently

reliable," *Buck*, 869 F.3d at 1051, substantial evidence supports an ALJ's findings about job

numbers based on the VE's testimony when the plaintiff only challenge to the VE's testimony is

in the form of job-numbers data from a source different from the source relied on by the VE. *See,*

*e.g.*, *Solano v. Colvin*, 2013 WL 3776333 (C.D. Cal. July 16, 2013) (finding a plaintiff's data

from a source not relied on by the VE did not displace the reliability of the VE's testimony); *see*

*also Wright v. Berryhill*, 692 F. App'x 496, 497 (9th Cir. 2017) (holding that Plaintiff's

"alternative job numbers and criticism of the VE's sources" was not "a persuasive challenge to the ALJ's reliance on the VE's proffered job numbers"). When a plaintiff tenders vastly different job numbers from *the same source* as the VE, however, remand for the ALJ to address the inconsistency is warranted. *Buck*, 869 F.3d at 1052.

This case represents the latter. Plaintiff's job-numbers data is "presumably from the same source" as the VE's. *See Buck*, 869 F.3d at 1052. Plaintiff's evidence is from the BLS's SOC codes. The VE testified that her source for the number of printed circuit board assembly jobs was the "Department of Labor." AR 69. The BLS is part of the Department of Labor and the BLS's SOC codes "provide[] information about job numbers" that VEs often rely on. *Tracey*, 2021 WL 369546, at *3 & n.2. The Commissioner did not identify, and the Court is aware of, no other Department of Labor source for data on the availability of jobs in the national economy for occupations aside from the BLS's SOC codes. The VE's testimony that her source for the statistics she provided was the "Department of Labor" therefore is apparently a reference to the BLS's SOC codes.

There is a vast discrepancy between the VE's testimony and the numbers Plaintiff produces. The VE testified that there were 711,000 printed circuit board assembly jobs in the national economy. AR 67. According to Plaintiff, however, the BLS states that there were only 557,510 jobs across all 782 occupations in SOC 51-9061.00. *See* Pl.'s Br. (ECF 13) at 6 n.2 (citing Occupational Employment and Wages, May 2018, U.S. Bureau of Labor Statistics, https://www.bls.gov/oes/2018/may/oes519061.htm). That is 150,000 fewer jobs across *all 782 occupations* encompassed by the SOC code than the VE identified as existing for *just one* of those 782 occupations. That discrepancy "is simply to striking to be ignored." *Buck*, 869 F.3d 1052.

The Commissioner argues that the Plaintiff is merely offering a different interpretation of the evidence and cites cases explaining that a plaintiff's different interpretation of the number of available jobs does not deprive the ALJ's decision of support from substantial evidence. *See* Def.'s Br. (ECF 14) at 4 & n.2. Those cases, however, are inapt. Plaintiff did not, as did plaintiffs in those cases, cite "an unauthenticated page" from a publication not relied on by the VE. *See Merryflorian v. Astrue*, 2013 WL 4783069, at *5 (S.D. Cal. Sept. 6, 2013) (same); *Solano*, 2013 WL 3776333, at *1 (plaintiff cited *Job Browser Pro*); *see also Villareal v. Colvin*, 2013 WL 3071259, at *6 (C.D. Cal. June 18, 2013) (same). Instead, Plaintiff relied on data from the BLS, just as the VE presumably did.

Without the VE's testimony about the number of printed circuit board assembly jobs available in the national economy, the record lacks substantial evidence to support the ALJ's finding that a significant number of printed circuit board assembly jobs exist in the national economy. The Commissioner argues that this error was harmless because the ALJ identified two other occupations—telemarketer and taxicab dispatcher—each with a significant number of jobs in the national economy. As explained above, however, substantial evidence does not support the ALJ's finding that Plaintiff can perform those occupations. The ALJ identified no other occupations with a significant number of jobs in the national economy. Thus, substantial evidence does not support the ALJ's finding that Plaintiff can perform jobs that exist in significant numbers in the national economy. On remand the ALJ should take evidence about whether the Plaintiff can perform jobs that exist in significant number in the national economy. *See Bowers v. Astrue*, 2012 WL 2401642, at *12 (D. Or. June 25, 2012) ("[T]he court concludes that remand for further administrative proceedings is required so that the ALJ can evaluate this posthearing evidence.").

**CONCLUSION**

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and

REMANDS for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 29th day of March, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge